2022-2203

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

DANIEL BADER,
Plaintiff-Appellant,

v.

UNITED STATES,
Defendant-Appellee.

---

Appeal from the United States Court of Federal Claims, Case No. 21-1501C,
Judge Nancy B. Firestone

---

# BRIEF FOR DEFENDANT-APPELLEE UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

DOUGLAS K. MICKLE
Assistant Director

TANYA B. KOENIG
Senior Trial Counsel
Department of Justice
1100 L Street, NW
Washington, DC 20530
Tel: (202) 305-7587
Email: tanya.b.koenig@usdoj.gov

March 7, 2023

Attorneys for Defendant-Appellee

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

GLOSSARY OF TERMS ........ vi

STATEMENT OF RELATED CASES ........ vii

JURISDICTIONAL STATEMENT ........ 2

STATEMENT OF THE ISSUE ........ 2

STATEMENT OF THE CASE ........ 2

I. Statement Of Facts ........ 3

A. Legal and Regulatory Background ........ 3

1. Federal Ethics Rules ........ 3

2. Officer Grade Determinations (OGDs) ........ 5

3. Military Corrections Boards ........ 6

B. Colonel Bader's Military Service ........ 6

C. Col. (Ret.) Bader's Administrative Proceedings ........ 8

1. Inspector General (IG) Investigation ........ 8

2. Col. (Ret.) Bader's Initial Petition To The AFBCMR ........ 10

3. Col. (Ret.) Bader's Petition For AFBCMR Reconsideration ........ 11

D. Court Of Federal Claims Litigation ........ 13

SUMMARY OF THE ARGUMENT ........ 14

ARGUMENT ........ 16

I. Standards Of Appellate Review ........................................................ 16

II. The Trial Court Correctly Found That The Correction Board's Decision Was Not Arbitrary Or Capricious ....................................... 17

A. The AFBCMR Did Not Ignore Col. (Ret.) Bader's Argument That, As A Matter Of Law, His Part-Time Work Cannot Constitute A Misuse Of Public Office ..................................... 17

1. Col. (Ret.) Bader Raised This Legal Argument For The First Time On Appeal And Thus, The Court Should Deem It Waived ........................................................... 18

2. Col. (Ret.) Bader Was Properly Found To Have Violated Both 18 U.S.C. § 207 and 5 C.F.R. § 2635 .... 21

B. The AFBCMR Did Not Ignore Col. (Ret.) Bader's Argument That Other Transaction (OT) Authority Permitted His Actions ........................................................................... 25

1. Col. (Ret.) Bader Failed To Raise This Issue Before The Trial Court And So He Has Waived It ................... 25

2. The Department Of Defense's Other Transaction (OT) Authority Did Not Permit Col. (Ret.) Bader's Actions ......................................................................... 28

C. The AFBCMR Properly Considered Lt. Russo's Letter And Testimony ........................................................................ 31

III. The AFBCMR's Decision Was Supported By Substantial Evidence ........................................................................... 35

A. The Trial Court Applied The Correct Legal Standard In Applying § 2635 .................................................................. 35

B. The AFBCMR's Decision That Col. (Ret.) Bader Violated § 2635 Is Supported By Substantial Evidence ............................ 38

CONCLUSION ........................................................................................ 41

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Armstrong v. United States*,
205 Ct. Cl. 754 (1974) ....................26

*Barnick v. United States*,
591 F.3d 1372 (Fed. Cir. 2010) ....................16, 40

*Beckton Dickinson & Co. v. C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990) ....................2

*Chambers v. United States*,
417 F.3d 1218 (Fed. Cir. 2005) ....................16

*Charles G. Williams Const., Inc. v. White*,
326 F.3d 1376 (Fed. Cir. 2003) ....................27

*Cooper v. United States*,
203 Ct. Cl. 300 (1973) ....................17

*Dep't of Commerce v. New York*,
— U.S. —, 139 S. Ct. 2551 (2019)....................17

*Ericsson Inc v. TCL Communication Technology Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ....................18, 25, 26

*Fleming v. Escort, Inc.*,
774 F.3d 1371 (Fed. Cir. 2014) ....................16

*FMC Corp. v. Hennessy Indus., Inc.*,
836 F.2d 521 (Fed. Cir. 1987) ....................27

*Golden Bridge Technology, Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ....................18, 25

*Heisig v. United States*,
719 F.2d 1153 (Fed. Cir. 1983) ....................passim

*HTC Corp. v. IPCom GmbH & Co., KG*,
667 F.3d 1270 (Fed. Cir. 2012) ....................19, 25

*In re DBC*,
545 F.3d 1373 (Fed. Cir. 2008) ....................26

*Koster v. United States*,
685 F.2d 407 (Ct. Cl. 1982) ....................5, 17

*Landes Const. Co., Inc. v. Royal Bank of*,
Can., 833 F.2d 1365 (9th Cir. 1987) ....................17

*Lowder v. Dep't of Homeland Sec.*,
504 F.3d 1378 (Fed. Cir. 2007) ....................27

*Melendez Camilo v. United States*,
642 F.3d 1040 (Fed. Cir. 2011) ....................passim

*Metz v. United States*,
466 F.3d 991 (Fed. Cir. 2006) ....................19

*Murakami v. United States*,
398 F.3d 1342 (Fed. Cir. 2005) ....................19

*Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*,
315 F.3d 1335 (Fed. Cir. 2003) ....................27

*Selman v. United States*,
723 F.2d 877 (Fed. Cir. 1983) ....................28

*Sharpe v. United States*,
935 F.3d 1352 (Fed. Cir. 2019) ....................17

*Singleton v. Wulff*,
428 U.S. 106 (1976) ....................18, 25

*Skinner v. United States*,
594 F.2d 824 (Ct. Cl. 1979) ....................16

*Van Cleave v. United States*,
70 Fed. Cl. 674 (2006) ....................35

*Woodford v. Ngo*,
548 U.S. 81 (2006) .......... 26

**STATUTES**

10 U.S.C. § 1370 .......... 13
10 U.S.C. § 1370(a)(1) .......... 5
10 U.S.C. § 1370(a)(2)(A) .......... 5
10 U.S.C. § 1552(a)(1) .......... 6
10 U.S.C. § 2371 .......... 29
10 U.S.C. § 2371b(h) .......... 29
10 U.S.C. § 12771 .......... 5
10 U.S.C. §§ 1551-1559 .......... 6
18 U.S.C. § 203 .......... 7, 21
18 U.S.C. § 205 .......... 7, 21
18 U.S.C. § 207 .......... passim
18 U.S.C. § 207(c) .......... 7
18 U.S.C. § 207(c)(1) .......... 3
18 U.S.C. § 207(c)(2)(iv) .......... 3
28 U.S.C. § 1295 .......... 2
37 U.S.C. § 201(a)(1) .......... 3
41 U.S.C. § 423 .......... 29
41 U.S.C. §§ 2101-2107 .......... 29
National Defense Authorization Act For Fiscal Year 2006,
Public Law 109-163, 119 Stat 3136 (2006) .......... 29

**REGULATIONS**

5 C.F.R. § 2635 .......... passim
5 C.F.R. § 2635.101(a) .......... 4, 36
5 C.F.R. § 2635.101(b) .......... 4, 22, 36, 37
5 C.F.R. § 2635.101(b)(7) .......... 22
5 C.F.R. § 2635.101(b)(14) .......... 35, 36
5 C.F.R. § 2635.502 .......... 5, 37
5 C.F.R. § 2635.702 .......... passim
5 C.F.R. § 2635.702(a) .......... 5, 36, 37
5 C.F.R. § 2635.702(d) .......... 5, 37
32 C.F.R. § 865.4(a)(1) .......... 14
32 C.F.R. § 865.6 .......... 6

# GLOSSARY OF TERMS

| | |
|---|---|
| AATC | Air Force Reserve Command Test Center |
| AFBCMR | Air Force Board for the Correction of Military Records |
| ANG | Air National Guard |
| CRS | Congressional Research Service |
| DOD | Department of Defense |
| FAR | Federal Acquisition Regulation |
| GC | Air Force General Counsel's Office |
| GMRE | Gauss Management Research & Engineering, Inc. |
| IG | Air Force Office of the Inspector General |
| NGB | National Guard Bureau |
| OGD | Officer Grade Determination |
| OT | Other Transaction |
| PC | Air Force Personnel Council |
| PIA | Procurement Integrity Act |

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, defendant-appellee's counsel states that she is unaware of this action previously appearing before this Court under the same or similar title and is unaware of any case pending in this or any other court that may directly affect or be affected by this Court's decision in this appeal.

BRIEF FOR DEFENDANT-APPELLEE

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

2022-2203

DANIEL BADER,
Plaintiff-Appellant,

v.

UNITED STATES,
Defendant-Appellee.

**RESPONSE BRIEF FOR DEFENDANT-APPELLEE UNITED STATES**

Plaintiff-appellant, Colonel (Retired) Daniel Bader (Col. (Ret.) Bader), appeals from the United States Court of Federal Claims' judgment denying Col. (Ret.) Bader's motion for judgment on the administrative record and granting the United States judgment on the administrative record. The trial court correctly concluded that the decision of the Air Force Board for the Correction of Military Records (AFBCMR or Correction Board) was supported by substantial evidence and was not arbitrary and capricious when it upheld Col. (Ret.) Bader's Officer Grade Determination (OGD). The AFBCMR rationally upheld the Air Force's determination that Col. (Ret.) Bader be retired in the rank of Colonel rather than a

Brigadier General, because that was the highest permanent grade in which Col. (Ret.) Bader served satisfactorily due to his violation of certain ethics rules.

## JURISDICTIONAL STATEMENT

This Court possesses jurisdiction to review judgments of the Court of Federal Claims pursuant to 28 U.S.C. § 1295 and, thus, possesses jurisdiction to review the judgment in this case.

## STATEMENT OF THE ISSUE[1]

Whether the trial court correctly determined that the AFBCMR's decision was not arbitrary or capricious and was supported by substantial evidence.

## STATEMENT OF THE CASE

Col. (Ret.) Bader's Statement of the Case, Applnt Br. 5-37,[2] contain allegations and characterizations with which we disagree. Col. (Ret.) Bader's

[1] Col. (Ret.) Bader does not appeal several issues or sub-issues presented to and addressed by the trial court, including, but not limited to Col. (Ret.) Bader's claim that the AFBCMR violated his due process rights. Because these issues have not been appealed, Col. (Ret.) Bader has waived these issues and we do not address them. *See Beckton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990) ("an issue not raised by an appellant in its opening brief . . . is waived.").

[2] "Applnt Br. at __" refers to Col. (Ret) Bader's opening brief filed on December 14, 2022.

statement also omits relevant information. Accordingly, we are providing a statement regarding the facts and course of proceedings below.

# I. Statement Of Facts

## A. Legal and Regulatory Background

### 1. Federal Ethics Rules

A wide variety of statutory and regulatory ethics rules govern the behavior of Federal employees, to include military officers.

Section 207(c) of Chapter 18 of the U.S. Code states in pertinent part:

> …any person who is an officer or employee (including any special Government employee) of the executive branch of the United States (including an independent agency), who is referred to in paragraph (2), and who, within 1 year after the termination of his or her service or employment as such officer or employee, knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of the department or agency in which such person served within 1 year before such termination, on behalf of any other person (except the United States), in connection with any matter on which such person seeks official action by any officer or employee of such department or agency, shall be punished as provided in section 216 of this title.

18 U.S.C. § 207(c)(1). This provision applies to anyone "employed in a position which is held by an active duty commissioned officer of the uniformed services who is serving in a grade or rank for which the pay grade (as specified in section 201 of title 37) is pay grade O–7 or above." 18 U.S.C. § 207(c)(2)(iv). For the Air Force, pay grade O-7 is the rank of Brigadier General. *See* 37 U.S.C. § 201(a)(1).

Section 2635.101 requires that every Federal employee "place loyalty to the Constitution, laws and ethical principles above private gain." 5 C.F.R. § 2635.101(a). The regulation also lays out general principles that "apply to every employee and may form the basis for the standards contained in this part," including that:

> (7) Employees shall not use public office for private gain….
>
> (10) Employees shall not engage in outside employment or activities, including seeking or negotiating for employment, that conflict with official Government duties and responsibilities….
>
> (14) Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part. Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

5 C.F.R. § 2635.101(b).

Specifically, as to misuse of public office, § 2635 provides the general standard that "[a]n employee shall not use his public office for his own private gain . . . or for the private gain of friends, relatives, or . . . persons with whom the employee has or seeks employment or business relations." 5 C.F.R. § 2635.702. "The specific prohibitions set forth in paragraphs (a) through (d) of this section apply this general standard, but are not intended to be exclusive or to limit the

application of this section." 5 C.F.R. § 2635.702.

One specific prohibition in § 2635.702 is that "[a]n employee shall not use or permit the use of his Government position or title or any authority associated with his public office in a manner that is intended to coerce or induce another person, including a subordinate, to provide any benefit, financial or otherwise, to himself or to friends, relatives, or persons with whom the employee is affiliated in a nongovernmental capacity." 5 C.F.R. § 2635.702(a). And subsection (d) provides that, "[t]o ensure that the performance of his official duties does not give rise to an appearance of use of public office for private gain or of giving preferential treatment, an employee whose duties would affect the financial interests of a friend, relative or person with whom he is affiliated in a nongovernmental capacity shall comply with any applicable requirements of § 2635.502. 5 C.F.R. § 2635.702(d).

### 2. <u>Officer Grade Determinations (OGDs)</u>

Federal law allows the Secretary of a military department to retire commissioned officers "in the highest permanent grade in which such officer is determined to have served . . . satisfactorily." 10 U.S.C. § 1370(a)(1) (active duty), *cf.* 10 U.S.C. § 12771 (reserves). As relevant here, satisfactory service is determined "[b]y the Secretary of the military department concerned." 10 U.S.C. § 1370(a)(2)(A); *see also Koster v. United States*, 685 F.2d 407, 413 (Ct. Cl.

1982). "An OGD resulting in retirement in a lower grade is not punishment. It is an administrative action required by law that determines the highest grade in which an officer served satisfactorily." Appx633 (Air Force Instruction 36-3203, Section 7.6.2.3 (2015)).[3]

### 3. Military Corrections Boards

Congress has created a comprehensive and exclusive system through which members of the armed forces can request correction of their military records. *See* 10 U.S.C. §§ 1551-1559. Under this system, each Secretary of a military department has the discretion to correct a military record "when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The board may reconsider its decisions when it encounters "newly discovered relevant evidence that was not reasonably available when the application was previously considered." 32 C.F.R. § 865.6.

## B. Colonel Bader's Military Service

Colonel Bader entered the Air Force in 1985 and served until his retirement in 2012. Appx7, Appx9. During his service Col. (Ret.) Bader served in many roles, including with the Air National Guard (ANG) from 2010 to 2012, as a commander with the Air Force Reserve Command Test Center (AATC) from 2008 to 2009, and in the National Guard Bureau (NGB) in various positions between

[3] Appx__ refers to the joint appendix which will be filed in this appeal.

1999 and 2010. Appx192. In 2010, Col. (Ret.) Bader was selected for promotion to the grade of Brigadier General and transitioned into a "traditional reservist" role in which he only occupied a part-time military status. Appx7.

During his transition to part-time status, Col. (Ret.) Bader received advice from an ethics counselor at the NGB about transitioning to civilian employment. Appx7-8. On June 30, 2010, the ethics counselor advised Col. (Ret.) Bader that 18 U.S.C. § 207(c) prohibited him from representing back to the government on specific matters for one year, known as a "cooling off" period. *Id.* (citing Appx96; Appx158-159).

The Air Force subsequently placed Col. (Ret.) Bader on military orders with duty at the AATC from August 12, 2010 through December 31, 2010, which started a one-year cooling off period. Appx8 (citing Appx483). Col. (Ret.) Bader received another ethics opinion, which cautioned Col. (Ret.) Bader that "[i]nterfacing with government employees while performing work for a contractor in a Federal workplace almost always involves making representations back to the Federal government," in violation of 18 U.S.C. §§ 203 and 205. Appx161. The ethics opinion also notified Col. (Ret.) Bader that, in calculating the "cooling off" period

> you must use the concept of a 'rolling year' because you are still performing active duty periodically. On the last day of any particular period of active duty, you must look back at the previous 365 days and count the number of

> days on which you served on active duty. If the number totals 60 or more days, then you have a one-year 'cooling-off' period from that day.

*Id.*

Col. (Ret.) Bader began working as a private contractor for Gauss Management Research and Engineering, Inc. (GMRE) in 2011, but also engaged in 65 days of military duty during that same year. Appx8-9 (citing Appx484-485). Col. (Ret.) Bader continued to accumulate additional periods of military service into 2012 and 2013, and he received subsequent cautions from the NGB ethics office advising him of potential ethical conflicts of interest between his military and civilian positions. Appx9 (citing Appx485). Col. (Ret.) Bader continued to work on Air Force contracts for GMRE through 2012, until his retirement. *Id.*

### C. Col. (Ret.) Bader's Administrative Proceedings

#### 1. Inspector General (IG) Investigation

The Air Force became aware of potential improprieties in Col. (Ret.) Bader's dual-status behaviors and subsequently launched an investigation through the Air Force Office of the Inspector General (IG). Appx9. In pertinent part, the IG investigated two allegations: 1) whether Col. (Ret.) Bader violated the post-Government ethics restrictions of 18 U.S.C. § 207 by violating the "cooling off" rules of post-Government employment; and 2) whether Col. (Ret.) Bader used his public office for private gain in violation of 5 C.F.R. § 2635. Appx9 (citing

Appx165). The IG investigation found both allegations substantiated. Appx9-10 (citing Appx202-203).

On the first allegation, the IG found that "[Col. (Ret.)] Bader violated the one-year 'cooling off' period by engaging in actions on behalf of GMRE, his employer, with the [Air National Guard/Air Force Reserve Command Test Center, where Col. Bader previously served] in 2011 and with the [National Guard Bureau] in 2012." Appx10 (citing Appx202). Specifically, the IG found that Col. (Ret.) Bader "communicated with the Air Force regarding Air Force contracts on 'at least two occasions via email' during his 2011 'cooling-off' period, 'with the intent to influence' Air Force leadership 'into awarding business to GMRE.'" *Id.* (citing Appx190). The report concluded that Col. (Ret.) Bader represented GMRE "on a number of occasions" to AATC and NGB during later cooling off periods as well. Appx10 (citing Appx202).

On the second allegation, the IG found that "[Col. (Ret.)] Bader's actions while serving as an ANG general officer and employee of GMRE constituted a use of his public office for private gain." Appx10 (citing Appx202). Specifically, IG found that Col. (Ret.) Bader "used and benefitted from the authority derived from his rank and position, and the 'blurring' of his military and civilian statuses gave rise to the appearance of conflict." *Id.* The IG also found that Col. (Ret.) Bader, "[w]hile in a duty status," "was afforded direct access to the NGB, and actively

solicited and obtained the assistance of subordinate military officers to secure a contract on behalf of his employer, GMRE." Appx202. In part, the IG relied on testimony of former First Lieutenant Kimberly Russo (Lt. Russo) that Col. (Ret.) Bader "directed her to send emails he had drafted on behalf of GMRE using her own signature line" and that his "rank influenced her actions with regard to her work with GMRE contracts." Appx30 (citing Appx196-197). The IG concluded that "[t]he appearance of impropriety was substantial," and that Col. (Ret.) Bader "did not avoid participating in activities which reasonably created the appearance that he was violating his public trust." Appx10 (citing Appx202-203).

As a result of the IG investigation, the Air Force issued Col. (Ret.) Bader a Letter of Reprimand in mid-2014. Appx11 (citing Appx205-206). Col. (Ret.) Bader responded to the letter on July 31, 2014, conceding that, although "[he] had no intention of taking actions deemed wrongful or to use a public office for private gain," he "understand[s] how the IG might conclude otherwise and accept[s] their conclusions." Appx11 (citing Appx209). On October 7, 2015, the Secretary of the Air Force made an OGD, determining that Col. (Ret.) Bader should be retired at the rank of colonel based on his conduct. Appx12.

### 2. <u>Col. (Ret.) Bader's Initial Petition To The AFBCMR</u>

On June 20, 2016, Col. (Ret.) Bader applied to the AFBCMR for correction of his records. Appx12. Col. (Ret.) Bader's petition to the AFBCMR contended,

among other things, that: (1) he should be retired at the rank and grade of Brigadier General (O-7) rather than as a Colonel (O-6); (2) the IG investigation erred in substantiating that he misused his public office for private gain; and (3) his letter of reprimand should be removed from his record. Appx76. The AFBCMR sought advisory opinions from both the National Guard Bureau (NGB) (where Col. (Ret.) Bader previously served) and the Air Force Personnel Council (PC) (which processed the Officer Grade Determination) for purposes of evaluating Col. (Ret.) Bader's application. Appx13. Col. (Ret.) Bader responded to the advisory opinions. Appx14. A panel of the AFBCMR met on September 26, 2017 and determined that no error or injustice existed in Col. (Ret.) Bader's case. *Id.* (citing Appx80). In its decision, the AFBCMR adopted the two advisory opinions in finding that no basis for correction of Col. (Ret.) Bader's records existed. Appx79-80; Appx86-90.

### 3. Col. (Ret.) Bader's Petition For AFBCMR Reconsideration

On September 5, 2019, Col. (Ret.) Bader filed an application for reconsideration of the 2017 denial. Appx15. In his application, he continued to allege that he should be retired as a Brigadier General, that the IG report should find unsubstantiated his misuse of public office for private gain, and that his letter of reprimand should be removed. Appx81. This application also included "new evidence" for his reconsideration request, to include an advisory opinion by a

former government ethics attorney, a letter from Lt. Russo, and various other exhibits and character letters. Appx15.

Pursuant to the reconsideration application, the AFBCMR sought an advisory opinion from the Secretary of the Air Force, Office of General Counsel (GC or General Counsel's Office). Appx15 (citing Appx482-492). The General Counsel's Office opined that the record supported the IG report's conclusion that Col. (Ret.) Bader misused his public office for private gain. Appx487, Appx489. The advisory opinion also opined that Col. (Ret.) Bader's subsequent Officer Grade Determination was not unjust or grossly disproportionate to his misconduct, instead finding it permissible and within the discretionary range of consequences. Appx490-492. Col. (Ret.) Bader provided his rebuttal on August 24, 2020. Appx16.

Between July 28 and September 28, 2020, a panel of the AFBCMR again convened to consider Col. (Ret.) Bader's reconsideration request. Appx15 (citing Appx84). Ultimately, the panel concurred with the advisory opinion by the General Counsel's office and found that no new evidence had been presented which warranted overturning the earlier investigations. Appx16 (citing Appx83-84). Thus, the AFBCMR denied Col. (Ret.) Bader's request for relief, finding that no error or injustice existed. *Id.*

### D. Court Of Federal Claims Litigation

Col. (Ret.) Bader filed a complaint in the Court of Federal Claims on June 23, 2021 and filed an amended complaint on August 9, 2021, seeking to restore his rank from Colonel to Brigadier General. Appx16, Appx53-54. The Government filed the administrative record on August 23, 2021, and the parties briefed cross-motions for judgment on the administrative record. Appx17.

The trial court issued its decision on July 6, 2022. As an initial matter, the trial court found that it possessed jurisdiction pursuant to the Officer Grade Determination statute, 10 U.S.C. § 1370, even though Col. (Ret.) Bader failed to identify any money-mandating statute applicable to his claims before the trial court.[4] Appx19-23. The trial court also found that, to the extent Col. (Ret.) Bader challenges the procedure followed by the AFBCMR in issuing its decision upholding Col. (Ret.) Bader's OGD, his claim is justiciable. Appx26-27.

On the merits, the trial court concluded that Col. (Ret.) Bader failed to meet his burden demonstrating that the Correction Board ignored evidence. Appx28-30. Specifically, as the trial court found, the AFBCMR and advisory opinions reviewed all relevant evidence in issuing their recommendations and decisions. Appx30-33.

---

[4] The trial court declined to dismiss Col. (Ret.) Bader's complaint despite finding that "he failed to specifically cite this statute in his amended complaint." Appx23 n.4.

Finally, the trial court determined that the AFBCMR's decision was reasonable and supported by substantial evidence. Appx33-39. The trial court found that there was sufficient evidence in the record for the AFBCMR to conclude "that Col. Bader 'blurred lines of authority in advancing GMRE's interests.'" Appx33 (citing Appx487-488). The trial court rejected Col. (Ret.) Bader's suggestion that the court reweigh evidence. Appx34 (citing *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983)). The trial court also rejected Col. (Ret.) Bader's assertion that the AFBCMR did not adequately justify its decision, finding that "the AFBCMR has articulated an adequate decision in this case in both [its] initial and reconsideration opinions." Appx36. In so finding, the trial court noted that "[t]he AFBCMR was entitled to rely on advisory opinions in drawing its conclusions." Appx38 (citing 32 C.F.R. § 865.4(a)(1)).[5]

This appeal followed, in which Col. (Ret.) Bader seeks to vacate the judgment of the trial court and a remand to the AFBCMR to remove the letter of reprimand and direct that he be retired at the rank of Brigadier General. Applnt Br. at 57.

## SUMMARY OF THE ARGUMENT

The Correction Board's decision upholding Col. (Ret.) Bader's Officer

[5] The trial court also rejected Col. (Ret.) Bader's due process arguments and its argument that the arbitrary and capricious standard should not apply. Appx39-41. Because he does not raise these issues on appeal, we do not further discuss them.

Grade Determination was not arbitrary or capricious and did not ignore his arguments. First, Col. (Ret.) Bader did not argue below that, as a matter of law, working in dual roles could not constitute a misuse of public office and, thus, this argument is waived on appeal. On the merits, Col. (Ret.) Bader asks this Court to reweigh the evidence and substitute the Court's judgment for that of the Secretary of the Air Force. Second, Col. (Ret.) Bader also waived his argument that the Department of Defense's (DOD) Other Transaction (OT) authority permitted his actions by failing to raise this argument to the trial court. However, even if not waived, the OT regulations do not support his contentions. Third, Col. (Ret.) Bader fails to demonstrate that the AFBCMR ignored Lt. Russo's letter, or that Lt. Russo's opinion should have caused the AFBCMR to reach a different conclusion.

The Correction Board's decision is also supported by substantial evidence. The trial court and the AFBCMR used the correct legal standard to conclude that Col. (Ret.) Bader misused his public office for private gain under 5 C.F.R. § 2635. Moreover, factually the administrative record provides substantial evidence of Col. (Ret.) Bader's violations of this regulation.

Thus, the trial court's judgment must be affirmed.

# ARGUMENT

## I. Standards Of Appellate Review

This Court "review[s] a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record without deference." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). The Court therefore applies "the same standard of review as the trial court," and should only overturn the AFBCMR's decision if it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.* The court reviews the trial court's findings of fact for clear error. *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (citing *Heisig*, 719 F.3d at 1158).

This standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157. Thus, because this Court does not sit as a "super correction board," *Skinner v. United States*, 594 F.2d 824, 829-30 (Ct. Cl. 1979), where reasonable minds might reach differing conclusions on the evidence, the Court will not substitute its judgment for that of the board's. *Fleming v. Escort, Inc.*, 774 F.3d 1371, 1375 (Fed. Cir. 2014) ("Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the

evidence.”) (quoting *Landes Const. Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987)).

The AFBCMR’s decision must have “examined ‘the relevant data’ and articulated ‘a satisfactory explanation’ for [its] decision, ‘including a rational connection between the facts found and the choice made.’” *Sharpe v. United States*, 935 F.3d 1352, 1358-59 (Fed. Cir. 2019) (quoting *Dep’t of Commerce v. New York*, — U.S. —, 139 S. Ct. 2551, 2569 (2019) (internal citations omitted)). A Correction Board’s decision need not address every allegation raised. *Koster*, 685 F.2d at 414. The Court must “presume that actions taken by the Correction Board are valid, and the burden is upon the complainant to show otherwise.” *Melendez Camilo*, 642 F.3d at 1044 (citing *Cooper v. United States*, 203 Ct. Cl. 300, 304 (1973)).

## II. The Trial Court Correctly Found That The Correction Board’s Decision Was Not Arbitrary Or Capricious

### A. The AFBCMR Did Not Ignore Col. (Ret.) Bader’s Argument That, As A Matter Of Law, His Part-Time Work Cannot Constitute A Misuse Of Public Office

The Correction Board decided the issues that were properly before it in upholding Col. (Ret.) Bader’s OGD, including whether Col. (Ret.) Bader violated 5 C.F.R. § 2635 which, among other things, prohibits the use of public office for private gain. The AFBCMR relied on several advisory opinions, including one from the Secretary of the Air Force’s General Counsel’s Office, which concluded

that the preponderance of the evidence supported Col. (Ret.) Bader's violation of § 2635 and subsequent OGD. Appx83-84.

### 1. Col. (Ret.) Bader Raised This Legal Argument For The First Time On Appeal And Thus, The Court Should Deem It Waived

Col. (Ret.) Bader makes a (erroneous) legal argument for the first time on appeal that 18 U.S.C. § 207 preempts 5 C.F.R. § 2635, and that a violation of § 207 cannot also constitute a violation of § 2635. *See, e.g.*, Applnt Br. at 42 ("Congress left no room for the Correction Board to create a broader prohibition under the military's general authority to prevent use of public office for private gain.").

As an initial matter, Col. (Ret.) Bader is not permitted to raise issues for the first time on appeal. Generally, "a federal appellate court does not consider an issue not passed upon below." *Golden Bridge Technology, Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). Although the Court possesses discretion in determining whether an issue is waived, this general waiver rule: "ensures finality in litigation by limiting the appealable issues to those a lower court had an opportunity to, and did, address;" "conserves judicial resources because it prevents parties from undoing a lower court's efforts—sometimes spanning years of litigation—based on an error that a lower court could have considered and corrected;" and "discourages parties from inviting an alleged error below only to raise it on appeal." *Ericsson Inc v. TCL*

*Communication Technology Holdings Ltd.*, 955 F.3d 1317, 1323 (Fed. Cir. 2020) (quoting *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1281 (Fed. Cir. 2012)).

Notably, Col. (Ret.) Bader does not provide any citation for this alleged argument, because he did not raise it at any point in the proceedings below. *See* Applnt Br. at 41. And, because the IG report concluded that Col. (Ret.) Bader violated both § 207 and § 2635, there is no reason that would excuse his failure to raise this issue to the AFBCMR[6] or to the trial court.

The arguments that Col. (Ret.) Bader made before the AFBCMR were factual, rather than legal, in nature. For example, in his initial petition to the AFBCMR on July 16, 2016, Col. (Ret.) Bader alleged that the "*facts* counter any finding that Daniel S. Bader ever intended to or attempted to use his government position for personal gain." Appx99 (emphasis added). Similarly, in his February 7, 2017 response to the advisory opinions, Col. (Ret.) Bader argues that "[n]o evidence was raised to show an abuse of office by former Brig Gen Daniel S. Bader towards NGB officers Col Mancini, Lt Col Couisine or [Lt.] Russo." Appx348. He also argues that "[t]he substantiated misconduct was never

[6] A claimant's failure to raise an issue during the correction board proceedings operates as a waiver of the issue in the Court of Federal Claims. *Metz v. United States*, 466 F.3d 991, 999 (Fed. Cir. 2006) (citing *Murakami v. United States*, 398 F.3d 1342, 1354 (Fed. Cir. 2005)).

intentional. There was no proof of intent to use his public office for private gain." Appx349. Col (Ret.) Bader's later arguments are similarly factual in nature. *See* Appx374 (request for reconsideration arguing that "he did not ever intend to, nor attempt to, misuse his public position for personal financial gain," and that to conclude otherwise "is an injustice and is fundamentally unfair."); Appx456 (arguing that the advisory opinion "reaches a completely wrong conclusion," because it "created the opinion of a reasonable person to replace the opinion of the relevant person, [Lt.] Russo.").

In making these factual arguments, Col. (Ret.) Bader neither references 5 C.F.R. § 2635.702, nor makes any argument "as a matter of law." Rather, Col. (Ret.) Bader makes factual arguments that the facts of his case should not have been found to substantiate his violation of § 2635. Col. (Ret.) Bader's factual arguments were rejected by the Correction Board, which properly concluded that Col. (Ret.) Bader violated 5 C.F.R. § 2635.

But the AFBCMR did not and could not, fail to address any argument that, as a matter of law, Col. (Ret.) Bader did not misuse his public office, because he never presented such an argument to the AFBCMR. Thus, because Col. (Ret.) Bader never presented his legal argument to either the AFBCMR or the trial court, this Court should deem his argument waived.

### 2. Col. (Ret.) Bader Was Properly Found To Have Violated Both 18 U.S.C. § 207 and 5 C.F.R. § 2635

To the extent this Court decides to consider Col. (Ret.) Bader's newly raised argument, this new argument is unpersuasive. Nothing in the language of either § 207 or § 2635 prohibits the Air Force from finding a violation of both sections.

First, Col. (Ret.) Bader erroneously asserts that "the military told [him] that it was permissible for him to concurrently perform the dual roles which it later demoted him for performing." Applnt Br. at 46. The opposite is true. Although the ethics advisor did not strictly *prohibit* Col. (Ret.) Bader from holding private employment while in part-time military status, the ethics advisor cautioned Col. (Ret.) Bader that "[i]nterfacing with government employees while performing work for a contractor in a Federal workplace almost always involves making representations back to the Federal government," in violation of 18 U.S.C. §§ 203 and 205. Appx161. The ethics advisors never advised Col. Bader that he may, without limit, represent back to his former office during the cooling off period, or that he may use his military authority for the private benefit of his employer. Appx161-162.

Moreover, even if it is possible to serve in dual roles in some cases, Col. (Ret.) Bader ignores that what he did was *not* permissible performance of dual roles; rather, he was found to have violated § 207 by making representations to the Air Force on behalf of his private employer during the one-year cooling off period.

Col. (Ret.) Bader does not challenge this violation. In fact, Col. (Ret.) Bader has conceded that his actions violated § 207's "cooling off" rules.[7] *See, e.g.*, Appx107 ("Daniel Bader has accepted responsibility for honestly but mistakenly misinterpreting the one year cooling off period"); Appx209 ("I truly believed that I was always in compliance with the "Cooling Off" period rules. I had no intention of taking actions deemed wrongful or to use a public office for private gain. Still, I understand how the IG might conclude otherwise and accept their conclusions.").

The fact that Col. (Ret.) Bader violated § 207 does not prohibit the Air Force from also concluding that his actions violated § 2635. Col. (Ret.) Bader agrees that § 2635 provides generally applicable ethics standards. *See* Applnt Br. at 42 (acknowledging the "military's general authority to prevent use of public office for private gain"). The general principles laid out in § 2635.101(b) "apply to *every* employee," including that "[e]mployees shall not use public office for private gain." 5 C.F.R. § 2635.101(b)(7) (emphasis added). Even if Col. (Ret.) Bader had complied with the cooling off period rules in § 207, which he did not, that would not give him carte blanche to violate the generally applicable ethics standards in § 2635.

[7] Given that Col. (Ret.) Bader concedes a violation of 18 U.S.C. § 207, even if this Court disagrees that his actions violated § 2635, a remand would be necessary to determine whether Col. (Ret.) Bader's OGD may be upheld based on the violation of § 207 alone.

Although Col. (Ret.) Bader's violation of § 207 might have put him in the position to also violate § 2635, the basis for Col. (Ret.) Bader's § 2635 violation was not *per se* that Col. (Ret.) Bader worked part-time as an Air Force officer and for a private contractor. Rather, the IG report made numerous factual findings that Col. (Ret.) Bader's actions blurred his statuses and otherwise misused his office for private gain. As the IG report found, Col. (Ret.) Bader, while working for his private employer, GMRE, "directly engaged with the AATC leadership regarding a contract on behalf of GMRE which resulted in an award," "used and benefitted from the authority derived from his rank and position," blurred "his military and civilian statuses gave rise to the appearance of conflict," and "was afforded direct access to the NGB, and actively solicited and obtained the assistance of subordinate military officers to secure a contract on behalf of his employer, GMRE." Appx202. As the letter of reprimand stated, this misconduct "leaves the appearance - if not the reality - of an ethical failure." Appx205.

Moreover, in providing an advisory opinion, the General Counsel's Office found that the IG finding of an actual misuse of office was supported by the record. Appx487. The General Counsel's Office pointed to evidence within the record that Col. (Ret.) Bader's roles as an officer and a private contractor were blurred, including a witness's testimony that Col. (Ret.) Bader "took advantage of these ongoing relationships and blurred lines of authority in advancing GMRE's

interests." *Id.* The advisory opinion also noted at least one instance where, mistakenly or not, Col. (Ret.) Bader conducted private business on his military e-mail account. Appx488. The General Counsel's advisory opinion likewise focused on witness testimony of two subordinate military employees who, in dealing with Col. (Ret.) Bader in his civilian capacity, were intimidated and influenced by his military position. Appx488-489 (Col. (Ret.) Bader's actions described as "extraordinarily presumptuous").

Again, while Col. (Ret.) Bader might not have been in the position to misuse his office for private gain if he had not been violating § 207's cooling off period rules, the findings on § 2635 go further than what constitutes a violation of § 207. Simply put, his conduct violated two distinct ethical provisions. That is, while simply representing back to AATC as a GMRE employee during the cooling off period violates § 207, the additional findings that Col. (Ret.) Bader blurred his statuses, that he used a "politely directive tone" in dealing with subordinate military personnel, and that he both worked on contractual requirements for the Air Force and then bid on them as a Federal contractor substantiate a violation of § 2635 as well. Appx489. The Correction Board did not act arbitrarily or capriciously in rejecting Bader's arguments that his violation finding war erroneous or unjust, and the trial court's judgment in the Government's favor should be affirmed.

### B. The AFBCMR Did Not Ignore Col. (Ret.) Bader's Argument That Other Transaction (OT) Authority Permitted His Actions

One of the factual findings underpinning Col. (Ret.) Bader's violation of § 2635 and § 207 is that he "directly engaged with the AATC leadership regarding a contract on behalf of GMRE, which resulted in an award." Appx202. Col. (Ret.) Bader contends for the first time on appeal that the AFBCMR ignored his argument that his actions were permitted pursuant to Other Transaction (OT) authority. Applnt Br. at 48.

#### 1. Col. (Ret.) Bader Failed To Raise This Issue Before The Trial Court And So He Has Waived It

As an initial matter, this Court should disregard this argument as waived because Col. (Ret.) Bader did not raise this alleged error to the trial court. *See generally* Appx495-518; Appx553-564. As stated above, generally "a federal appellate court does not consider an issue not passed upon below." *Golden Bridge Tech.*, 527 F.3d at 1322 (quoting *Singleton*, 428 U.S. at 120). This waiver rule "ensures finality in litigation," "conserves judicial resources," and "discourages parties from inviting an error." *Ericsson*, 955 F.3d at 1323 (quoting *HTC Corp.*, 667 F.3d at 1281). Applying these principles to this case, the Court should not consider Col. (Ret.) Bader's arguments.

In his initial petition to the AFBCMR on July 16, 2016, Col. (Ret.) Bader alleged that the IG report came to an incorrect conclusion because, although in an

"ordinary procurement contracting action, it may not be proper for a company to both establish a government requirement and also propose fulfilling that same requirement," his actions were acceptable because the contracting effort was pursuant to OT authority. Appx102. However, Col. (Ret.) Bader did not raise any argument that the *Correction Board* did not properly address this issue in any of his subsequent administrative filings. *See, e.g.*; Appx353-375 (petition for reconsideration); Appx454-457 (rebuttal to the General Counsel's Office 2020 advisory opinion). If Col. (Ret.) Bader truly believed that the AFBCMR erred in not addressing his OT argument, he should have raised it during the administrative process. "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford v. Ngo*, 548 U.S. 81, 111 (2006) (citation omitted); *see also In re DBC*, 545 F.3d 1373, 1378 (Fed. Cir. 2008).

Nor did Col. (Ret.) Bader argue to the trial court that the AFBCMR failed to address his argument that DOD's OT authority permitted his actions. Appx495-518; Appx553-564. Thus, the trial court was never presented an opportunity to rule on this issue before it was raised on appeal. *Woodford*, 548 U.S. at 111. There is no reason that Col. (Ret.) Bader could not have raised this issue before the

Correction Board or the trial court, and, therefore, the Court should find it waived. *Ericsson*, 955 F.3d at 1323.

Moreover, this Court should not find that the AFBCMR failed to consider Col. (Ret.) Bader's argument on this issue. This Court must "presume that the Correction Board performed its function according to the regulations and considered all of [the applicant's] records." *Melendez Camilo*, 642 F.3d at 1045 (citing *Armstrong v. United States*, 205 Ct. Cl. 754, 756 (1974); *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1343 (Fed. Cir. 2003)). Thus, "an administrative board's or trial court's failure to mention specific evidence does not mean . . . that it failed to consider that evidence." *Id.* (citing *FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 524 (Fed. Cir. 1987)); *see also Lowder v. Dep't of Homeland Sec.*, 504 F.3d 1378, 1383 (Fed. Cir. 2007) ("[t]he failure to discuss particular contentions in a case, however, does not mean that the tribunal did not consider them in reaching its decision"); *Charles G. Williams Const., Inc. v. White*, 326 F.3d 1376, 1380 (Fed. Cir. 2003).

The AFBCMR, in concluding that the IG report's findings were not erroneous, at least implicitly rejected Col. (Ret.) Bader's argument on this issue. Appx83-84. The IG report acknowledged that GMRE is a member of a consortium who provides services to DOD under OT authority. Appx167. The IG report also noted that an OT is not a procurement contract and is not subject to the Federal

Acquisition Regulation (FAR) and certain procurement statutes. Appx168. The IG report also found that at least one of the contracts which Col. (Ret.) Bader obtained on behalf of GMRE was pursuant to DOD's OT authority. Appx167-168. Yet the IG report disagreed that DOD's OT authority permitted Col. (Ret.) Bader's actions in concluding that Col. (Ret.) Bader violated § 207 and § 2635. Appx202. Given the IG report's conclusions, the AFBCMR did not act arbitrarily or capriciously in not specifically addressing Col. (Ret.) Bader's OT argument. *See Selman v. United States*, 723 F.2d 877 (Fed. Cir. 1983) (rejecting that the Secretary's decision was arbitrary and capricious where the Court can "discern from the record, as a whole, that the Secretary had sufficient evidence before him to reach the conclusion he did reach").

### 2. The Department Of Defense's Other Transaction (OT) Authority Does Not Permit Col. (Ret.) Bader's Actions

The Correction Board's decision implicitly rejecting Col. (Ret.) Bader's argument that it was permissible for him to "both establish a government requirement and also propose fulfilling that same requirement" was not arbitrary or capricious. Appx102. Before this Court, Col. (Ret.) Bader fails to explain why his actions were permissible, merely citing to his argument in his initial administrative petition from 2016. Applnt Br. at 48. The documents on which Col. (Ret.) Bader relied do not permit an employee to violate ethics rules in pursuing OT contracts.

Before the AFBCMR, Col. (Ret.) Bader relied on the "Congressional

Research Service (CRS) Report, 'Other Transaction' (OT) Authority," November 25, 2008. The CRS report provides that, although "OTs are not subject to the FAR," and some other procurement statutes and cost accounting standards do not apply, "an agency is 'required to comply with any other statute that applies to contractual transactions in general.'" Appx289-290 (citing Cibinic and Nash, *Formation of Government Contracts*, p. 20). Moreover, that OTs are exempted from some procurement laws does not authorize violations of otherwise applicable *ethics* violations. In fact, as noted in the CRS, the Procurement Integrity Act (PIA), 41 U.S.C. § 423, "applies to agreements for prototype 'other transactions,'" Appx283, as indicated by the "10 U.S.C. § 2371 note."[8] Appx281. As explained in an issue of The Nash & Cibinic Report, "[i]n early lists the Procurement Integrity Act (41 USCA §§2101-2107) was considered inapplicable but Congress

[8] Col. (Ret.) Bader incorrectly contended in 2016 before the AFBCMR that the PIA does not apply to OTs. Appx102 (citing Appx321). When Congress passed the 2006 National Defense Authorization Act (NDAA) through Public Law 109-163, it amended the 10 U.S.C. § 2371 note in Section 845(h). Section 823 (amending Section 845(h)) provides that, for agreements entered into pursuant to DOD's OT authority under 10 U.S.C. § 2371, the agreement "shall be treated as a Federal agency procurement for the purposes of section 27 of the Office of Federal Procurement Policy Act (41 U.S.C. 423)." P.L. 109-163, Section 823. Thus, since the 2006 NDAA, the PIA applies to OT agreements. That section has remained in effect and was codified into 10 U.S.C. § 2371b(h) in 2015. *See* 10 U.S.C. § 2371b(h) (2015) ("Applicability of procurement ethics requirements.--An agreement entered into under the authority of this section shall be treated as a Federal agency procurement for the purposes of chapter 21 of title 41.").

made it applicable to protype OTs in 10 USCA § 2731(b)(h)." The Nash & Cibinic Report, *Other Transaction Agreements: What Applies?*, Volume 32, Issue 5, https://www.strategicinstitute.org/wp-content/uploads/2017/09/May-2018-NCR-OTs-What-Applies.pdf) (last accessed March 6, 2023) (May 2018). The PIA, among other things, "prohibits the disclosure and acquisition of certain procurement information; [and] addresses certain circumstances under which a procurement office might be contacted regarding non-federal employment . . ." Appx283.

Moreover, as found by the IG report, DOD still selects OT proposals "though a competitive process." Appx168. An employee who "both establish[es] a government requirement and also propose[s] fulfilling that same requirement" receives an unfair competitive advantage.

The IG report's conclusion that Col. (Ret.) Bader's actions violated § 2635 were based on two factual circumstances relevant to OT agreements. First, in 2011, Col. (Ret.) Bader set up a telephone call between the OT consortium, AATC (the procuring agency), and himself (GMRE). After the telephone call, he emailed AATC "to discuss particulars for the exact task you want performed." Appx184. Col. (Ret) Bader also provided a draft proposal to the consortium on behalf of GMRE. *Id.* Ultimately, through Col. (Ret.) Bader's work with both AATC and GMRE, GMRE secured a $1.4 million contract to support the AATC. *Id.* Second,

in 2012, GMRE submitted a proposal to support the NGB, and was awarded a contract. Appx184. Col. (Ret.) Bader admitted to being involved with creating the statement of objectives on behalf of the Air Force, as well as working on the team that drafted the proposal on behalf of GMRE. Appx184-185; *see also* Appx189. The IG report properly concluded that these actions contributed to its conclusion that Col. (Ret.) Bader violated § 2635, even though they involved OT agreements.

Although Col. (Ret.) Bader was not found to have directly violated the Procurement Integrity Act, that act supports the IG report's conclusions, which were affirmed by the AFBCMR, that Col. (Ret.) Bader misused his public office for private gain when he both worked on an Air Force requirement and then bid on that requirement on behalf of his private contractor. Thus, the AFBCMR's decision upholding Col (Ret.) Bader's OGD, at least in part, on this basis neither ignored evidence nor was arbitrary or capricious.

### C. The AFBCMR Properly Considered Lt. Russo's Letter And Testimony

The trial court properly concluded that the AFBCMR's decision finding unpersuasive Col. (Ret.) Bader's reliance on newly submitted evidence (a letter provided by Lt. Russo) was supported by substantial evidence.[9] Appx30-32.

[9] The trial court considered Col. (Ret.) Bader's argument in this regard even though he did not raise it in either his motion for judgment on the administrative record or in his reply. Appx29 ("*[a]t oral argument*, counsel for Col. (Ret.) Bader also focused on a letter by former-Lt. Kimberly Russo") (emphasis added); *see*

On appeal, Col. (Ret.) Bader alleges that the AFBCMR ignored "key portions" of Lt. Russo's letter, amounting to a "failure to meaningfully grapple with Colonel Bader's evidence and arguments, individually, and, especially, together." Applnt Br. at 49-50. But Col. (Ret.) Bader asks this court to reweigh the evidence and give more credibility to the portions of the letter in Col. (Ret.) Bader's favor, in contravention of this Court's scope of review. *Heisig*, 719 F.2d at 1157. Moreover, the trial court correctly determined that the AFBCMR did not ignore the evidence before it, including Lt. Russo's letter. Appx30.

During the IG investigation, 14 witnesses were interviewed, including Lt. Russo, who was working with the NGB at the time. Appx165. The IG report relied on portions of Lt. Russo's testimony, including her statement that working with Col. (Ret.) Bader as a civilian for GMRE included "a little bit of intimidation factor" due to his rank. Appx196; *see also* Appx195 ("to be perfectly honest with you for me being a first lieutenant, I'd be lying if I said that there wasn't a little bit of an intimidation factor in the fact that it's a [general officer] sitting in the room . . . "). When Col. (Ret.) Bader drafted an email relating to a contract that GMRE was competing for and then asked Lt. Russo to send it as though it was from her, she testified that "it was a little odd" and that his rank had an influence on her decision to send the email anyways. Appx196. It was these facts, among others,

---

*generally* Appx495-518; Appx553-564.

that the IG report relied on in concluding that Col. (Ret.) Bader violated § 2635, which was upheld by the AFBCMR. Appx83-84.

As part of his motion for reconsideration, Col. (Ret.) Bader included a letter submitted by Lt. Russo six years later, which Col. (Ret.) Bader claimed should influence the AFBCMR to unsubstantiate the ethics violation. Appx382. But Lt. Russo's revised statements were not contradictory to the statements she made in the first instance. Indeed, she specifically states: "I see no reason to change my testimony, and I stand behind my statements." *Id.* And although Lt. Russo stated that "[i]t is *possible* that some of the questions the IG asked me may have been intended to elicit a negative response towards [Col. (Ret.)] Mr. Bader," she reiterated that "my testimony to the IG stands and I do not wish to modify anything." *Id.* (emphasis added).

As the trial court properly found, the General Counsel's Office advisory opinion specifically addressed Lt. Russo's letter. Appx31 (citing Appx485, Appx489). In fact, the advisory opinion agreed with Lt. Russo's assertion that Col. (Ret.) Bader "never expressly 'used his rank' to coerce her to act on his behalf." Appx489. However, the advisory opinion also considered what a reasonable person in Lt. Russo's position might have felt. The General Counsel's inquiry is consistent with § 2635, which provides that an employee must "avoid any actions creating the *appearance* that they are violating the law or the ethical standards set

forth in this part," including the prohibition on using their public office for private gain. 5 C.F.R. § 2635.101(b)(14) (emphasis added). The regulation also expressly provides that "[w]hether particular circumstances create an appearance that the law or these standards have been violated shall be determined *from the perspective of a reasonable person* with knowledge of the relevant facts." *Id.* (emphasis added).

The General Counsel's Office advisory opinion determined that Lt. Russo's letter did not overcome the reasonable person standard, concluding that Col. (Ret.) Bader crossed ethical lines in dealing with his current military office while in his private sector job. Appx489. As the trial court found, this conclusion was supported by substantial evidence in the IG report, which supports the finding that Col. (Ret.) Bader received access that he would not have otherwise received due to his military status. Appx31 (citing Appx489). The AFBCMR relied on the factual findings in the IG report and on the General Counsel's advisory opinion in ultimately upholding Col. (Ret.) Bader's Officer Grade Determination. Appx83-84.

The trial court correctly "disagree[d] with Col. (Ret.) Bader's contention that the [Correction] Board improperly ignored countervailing evidence submitted by Col. (Ret.) Bader." Appx30. As stated above, this Court must presume that the AFBCMR considered all relevant evidence. *Melendez Camilo*, 642 F.3d at 1045. As the trial court found, the advisory opinion, relied on by the AFBCMR,

specifically addressed Lt. Russo's letter and did not find it dispositive. Appx31. Moreover, the advisory opinion's conclusions are supported by substantial evidence from the IG report. This Court must not reweigh the evidence. *Heisig*, 719 F.2d at 1157.

## III. The AFBCMR's Decision Was Supported By Substantial Evidence

In addition to alleging that the AFBCMR's decision was arbitrary and capricious, Col. (Ret.) Bader argues that the AFBCMR's decision finding no error in Col. (Ret.) Bader's OGD was not supported by substantial evidence. The trial court correctly concluded otherwise.

When it comes to evidentiary determinations, review standards require deference to an agency's finding as long as the decision is supportable. "Substantial evidence" review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157 (emphasis omitted). The Court does not serve as a "super correction board[;]" therefore "[w]hen substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." *Van Cleave v. United States*, 70 Fed. Cl. 674, 678-79 (2006) (citations omitted).

### A. The Trial Court Applied The Correct Legal Standard In Applying § 2635

Contrary to Col. (Ret.) Bader's assertion, the trial court used the correct

standard for assessing his conduct under § 2635. As the trial court correctly determined, "'intent' is not determinative of whether he violated § 2635, which provides that federal employees must not 'appear' to violate the relevant ethical standards, determined from the 'perspective of a reasonable person with knowledge of the relevant facts.'"[10] Appx32 n.7 (quoting 5 C.F.R. § 2635.101(b)(14)). The IG report concluded that "[t]he appearance of impropriety was substantial," and "at a minimum, created the appearance that he violated the ethical standards related to his public service as an [Air National Guard] general officer." Appx10-11 (quoting Appx201-203).

On appeal, Col. (Ret.) Bader insists that he "was not investigated for a violation of 5 C.F.R. § 2635.101(b)(14)," and instead the IG report only "investigated and substantiated a finding that Colonel Bader violated section 2635.702." Applnt Br. at 55 (citing Appx165). Thus, he contends that, to find that he misused his public office for private gain, the AFBCMR must have found that he "acted with 'inten[t] to coerce or induce another person … to provide' a personal benefit." Applnt Br at 54 (quoting 5 C.F.R. § 2635.702(a)).

However, Col. (Ret.) Bader is incorrect that the IG report limited its

[10] The trial court noted that, at oral argument, Col. (Ret.) Bader argued that his conduct was not intentional. Appx32 n.7. In his briefs before the trial court, Col. (Ret.) Bader did not raise the new issue he now presses on appeal, *i.e.* that the reasonable person standard in § 2635.101(b)(14) should not apply. *See generally* Appx495-518; Appx553-564.

conclusions to §2635.702(a). In considering the allegation that Col. (Ret.) Bader misused his public office for private gain, the IG report noted that "*several* portions of Title 5 of the Code of Federal Regulations (C.F.R) are applicable to this allegation." Appx191 (emphasis added). The IG report then cited to the generally applicable standards in 5 C.F.R. § 2635.101(a) and 5 C.F.R. § 2635.101(b), including subsections (7) and (14). Appx191-192.

Moreover, the IG report also does not limit itself to considering a violation of §2635.702(a). The IG report cites to both subsections (a) and (d) of § 2635.702. Appx192. The IG's citation to § 2635.702 includes the introduction that "[t]he specific prohibitions set forth in paragraphs (a) through (d) of this section apply this general standard, but are not intended to be exclusive or to limit the application of this section." Appx192 (citing 5 C.F.R. § 2635.702). In fact, the IG report specifically italicized its citation to subsection (d) for emphasis. *See* Appx192 ("To ensure that the performance of his official duties *does not give rise to an appearance of use of public office for private gain* or of giving preferential treatment, an employee whose duties would affect the financial interests of a friend, relative or person with whom he is affiliated in a nongovernmental capacity shall comply with any applicable requirements of 2635.502 (Ex 59:593) (emphasis added)") (emphasis in original). Section 2635.502, in turn, provides that, in matters involving someone with whom Col. (Ret.) Bader "has or seeks a business,

contractual or other financial relationship," he "should not participate in the matter" if he knows that the matter "is likely to have a direct and predictable effect on the financial interest" of the party and "where the employee determines that the circumstances would cause a reasonable person with knowledge of the relevant facts to question his impartiality in the matter." 5 C.F.R. § 2635.502.

Both § 2635.101(b) and § 2635.502 contain a reasonable person standard, and both § 2635.101(b) and § 2635.702(d) prohibit even the appearance of use of public office for private gain. As the IG report found, there was sufficient evidence to conclude that Col. (Ret.) Bader's actions demonstrated at least the appearance of misuse public office for private gain. Appx201. The trial court correctly applied the correct standard in concluding that the AFBCMR's decision was supported by substantial evidence.

### B. The AFBCMR's Decision That Col. (Ret.) Bader Violated § 2635 Is Supported By Substantial Evidence

In any event, the General Counsel's Office advisory opinion made specific findings that the IG report reasonably concluded that a reasonable person could find that Col. (Ret.) Bader "engaged in behavior that blurred his statuses as an ANG GO and government contractor in a manner that allowed him to implicitly use [his] authority. . . 'in a manner *intended to induce others*, including NGB subordinates, to provide a benefit to himself and his employer GMRE.'" Appx489 (quoting Appx201) (emphasis added)

On appeal Col. (Ret.) Bader makes similar arguments to ones he made before the trial court, including that "he carefully maintained a distinction between his military and civilian statuses." Applnt Br. at 53; *see also* Appx515. Col. (Ret.) Bader also alleges that none of the evidence supports the AFBCMR's conclusion. Applnt Br. at 53. But the administrative record demonstrates otherwise.

As the trial court found, the Air Force General Counsel's Office advisory opinion discusses in detail the IG report, Appx487-489, and further found that Col. (Ret.) Bader "sent numerous emails to [Air Force] representatives [junior to Col. (Ret.) Bader] . . . in which he politely directed them to adopt his prepared 'cutline' text as their own and email other [Air Force] officials requesting information or actions in support of GMRE government contracts." Appx33 (citing Appx487-489). The trial court also found that the advisory opinion also explains that Col. (Ret.) Bader's communications and access to Air Force officials resulted in an approximately $1.4 million contract for GMRE. *Id.* (citing Appx488). The trial court concluded that "[t]his and other evidence of Col. [Ret.)]Bader's conduct in the record supports the conclusion that Col. [Ret.)]Bader 'blurred lines of authority in advancing GMRE's interests.'" *Id.* (quoting Appx487-488). These findings of fact are not erroneous, let alone clearly erroneous. *Melendez Camilo*, 642 F.3d at 1044.

These findings are also supported by the conclusions in the IG report, which

found that Col. (Ret.) Bader, while working for his private employer, GMRE, "directly engaged with the AATC leadership regarding a contract on behalf of GMRE which resulted in an award," "used and benefitted from the authority derived from his rank and position," blurred "his military and civilian statuses gave rise to the appearance of conflict," and "was afforded direct access to the NGB, and actively solicited and obtained the assistance of subordinate military officers to secure a contract on behalf of his employer, GMRE." Appx202. As the letter of reprimand stated, "[p]articularly egregious is the action you took to influence the scope of an NGB services contract and then writing the response to the same contract on behalf of your civilian employer, ensuring that your civilian employer was awarded the contract." Appx205. Far from there being "no evidence" to support Col. (Ret.) Bader's violation of § 2635, there is substantial evidence in the administrative record supporting that Col. (Ret.) Bader used his authority in a manner intended to induce others to provide a benefit to himself and his employer, GMRE. *Barnick*, 591 F.3d at 1377.

Ultimately, Col. (Ret.) Bader simply disagrees with the conclusion of the AFBCMR and seeks to have this Court reweigh the evidence. Because the trial court correctly determined that the AFBCMR decision upholding his OGD was supported by substantial evidence, and because reweighing evidence is outside the purview of this Court, *Heisig*, 719 F.2d at 1157, we request that the trial court's

judgment be affirmed.

CONCLUSION

Col. (Ret.) Bader fails to establish that the trial court erred in finding that the Correction Board's decision was reasonable and supported by substantial evidence. For these reasons we respectfully request that the Court affirm the judgment of the Court of Federal Claims.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

/s/ Tanya Koenig
TANYA KOENIG
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7587
Tanya.B.Koenig@usdoj.gov

March 7, 2023

Attorneys for Defendant

## CERTIFICATION OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure (FRAP) 32(a)(7)(B), I certify that the forgoing brief contains 9,437 words, excluding the parts of the brief exempted by the rule. The brief complies with the typeface requirements and type style requirements of FRAP 32(a)(5) and has been prepared using Times New Roman 14 point font, proportionally spaced typeface.

/s/ Tanya B. Koenig
TANYA B. KOENIG
Counsel for Defendant-Appellee United States