No. 22-2203

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

DANIEL BADER,
*Plaintiff-Appellant,*

v.

UNITED STATES,
*Defendant-Appellee.*

Appeal from the United States Court of Federal Claims,
No. 21-1501C

# PLAINTIFF-APPELLANT'S REPLY BRIEF

CARTER G. PHILLIPS
JILLIAN SHERIDAN STONECIPHER
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

CAROLINE A. WONG
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

*Counsel for Plaintiff-Appellant Daniel Bader*

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Daniel Bader certifies:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

   Daniel Bader

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

   Not Applicable.

3. **Parent Corporation and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. Fed. Cir. R. 47(a)(3).

   Not Applicable.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   Sean C. Timmons and Larry D. Youngner (Tully Rinckey, PLLC); Lt. Colonel Julie Pitvorec.

5. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5).

   None.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not Applicable.

April 21, 2023

*/s/ Jillian Sheridan Stonecipher*
JILLIAN SHERIDAN STONECIPHER
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

*Counsel for Plaintiff-Appellant*
*Daniel Bader*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .... i

TABLE OF AUTHORITIES .... v

STATEMENT OF RELATED CASES .... viii

INTRODUCTION .... 1

ARGUMENT .... 2

I. THE CORRECTION BOARD'S DECISIONS WERE ARBITRARY AND CAPRICIOUS .... 5

A. The Correction Board Ignored Colonel Bader's Argument That Representing A Civilian Employer To An Agency Where One Serves Part-Time Cannot Itself Constitute Misuse Of Public Office .... 5

1. Colonel Bader Raised This Issue Below .... 6

2. Failure to Adequately Consider This Issue Rendered the Correction Board's Decisions Arbitrary and Capricious .... 8

B. The Correction Board Ignored the Argument that Colonel Bader's Actions Were Permitted Pursuant to Other Transaction Authority .... 17

1. Colonel Bader Raised This Issue Below .... 17

2. The Court Should Not Presume the Board "Implicitly" Rejected This Argument .... 19

3. The Government Still Provides No Reasonable Response Regarding Other Transaction Authority .... 21

C. The Correction Board Failed to Consider Key Portions of Russo's Letter .... 23

II. THE CORRECTION BOARD'S DECISIONS WERE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE .... 25

A. The Correction Board's Findings Do Not Support A Conclusion that Colonel Bader Misused His Public Office .......... 25

B. A Violation of 5 C.F.R. § 2635.702(a) Requires Intent, Of Which There Is No Substantial Evidence .......... 27

CONCLUSION .......... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applications in Internet Time, LLC v. RPX Corp.*,
897 F.3d 1336 (Fed. Cir. 2018) ........ 21

*Baude v. United States*,
955 F.3d 1290 (Fed. Cir. 2020) ........ 2, 9

*Bosley v. Merit Sys. Prot. Bd.*,
162 F.3d 665 (Fed. Cir. 1998) ........ 19

*Campbell Soup Co. v. Gamon Plus, Inc.*,
787 F. App'x 731 (Fed. Cir. 2019) ........ 19

*Chisolm v. United States*,
41 F. App'x 394 (Fed. Cir. 2002) ........ 17, 23, 24

*Consolidation Coal Co. v. United States*,
351 F.3d 1374 (Fed. Cir. 2003) ........ 8

*Dickson v. Sec'y of Def.*,
68 F.3d 1396 (D.C. Cir. 1995) ........ 14, 20

*Doyon v. United States*,
58 F.4th 1235 (Fed. Cir. 2023) ........ 9, 14

*Frizelle v. Slater*,
111 F.3d 172 (D.C. Cir. 1997) ........ 8

*Kelly v. United States*,
826 F.2d 1049 (Fed. Cir. 1987) ........ 31

*LKQ Corp. v. GM Glob. Tech. Operations LLC*,
No. 2022-1253, 2023 WL 330605 (Fed. Cir. Jan. 20, 2023) ........ 18

*Marshall v. United States*,
164 Fed. Cl. 580 (2023) ........ 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 16

*Naekel v. Dep't of Transp.*,
782 F.2d 975 (Fed. Cir. 1986) .......... 28

*Neely-Bey Tarik-El v. Conley*,
912 F.3d 989 (7th Cir. 2019) .......... 18

*Nelson v. Adams USA, Inc.*,
529 U.S. 460 (2000) .......... 18

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) .......... 20

*Pfizer, Inc. v. Lee*,
811 F.3d 466 (Fed. Cir. 2016) .......... 8

*Schussler v. United States*,
152 Fed. Cl. 207 (2021), *appeal docketed*, No. 21-1819
(Fed. Cir. Apr. 2, 2021) .......... 19

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) .......... 21, 29

*Sneed v. Shinseki*,
737 F.3d 719 (Fed. Cir. 2013) .......... 18

*Sparks v. Eastman Kodak Co.*,
230 F.3d 1344 (Fed. Cir. 2000) .......... 30

*Wright v. Dep't of Transp.*,
900 F.2d 1541 (Fed. Cir. 1990) .......... 27

*Yee v. City of Escondido*,
503 U.S. 519 (1992) .......... 7

**Statutes and Regulations**

18 U.S.C. § 203 .......... 15, 16

18 U.S.C. § 205 .......... 16

18 U.S.C. § 207 .......... 2, 26

5 C.F.R. § 2635.101(b)(14) .......... 30

5 C.F.R. § 2635.502 .......... 30

5 C.F.R. § 2635.702 .......... 13, 20, 21, 25, 27, 29

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action or proceeding is or was previously before this or any other appellate court.

## INTRODUCTION

The government's brief is vague and imprecise: vague about what regulation the military relied on, wrong about what the military told Colonel Bader in ethics opinions, and unclear about what exactly Colonel Bader did that was objectionable and what status he was operating under at the relevant time. Precision about these things matters. It is perfectly appropriate to take actions when not in Title 10 status that would be improper if acting in Title 10 status. Actions that are impermissible if taken in a military capacity are permitted and expected in a civilian capacity. Practices that are barred under traditional government contracting regimes are encouraged under Other Transaction Authority.

The government does not trouble itself with these crucial distinctions. Like the Correction Board before it, it heaps innuendo on imprecision to create the impression of impropriety. Had the Correction Board adequately considered and addressed Colonel Bader's arguments and evidence, it would have realized there was no impropriety. It failed to do so, and its decisions were arbitrary, capricious, contrary to law, and unsupported by substantial evidence.

Colonel Bader dedicated decades to exemplary service in the United States military, and he "deserve[s] more." *Baude v. United States*, 955 F.3d 1290, 1293 (Fed. Cir. 2020). At a minimum, he deserves to have his arguments acknowledged and addressed by a "reviewing forum that does more than rubber-stamp the actions of military officials." *Id.* at 1306. The Correction Board failed to provide him that.

## ARGUMENT

The government does not argue that the military can demote an officer for performing dual roles consistent with 18 U.S.C. § 207. And it has no effective response to Colonel Bader's argument that holding such dual roles was the key reason why the military demoted him. The government does not argue that the cooling off period violation was the basis of the Board's misuse-of-office finding—and it was not. The government also does not dispute that the Board never addressed Colonel Bader's argument that holding dual roles cannot be a misuse of office. Instead, it asserts that Colonel Bader did not make the argument below. He did make the argument, and the Correction Board ignored it. That requires reversal.

The government also cannot defend the Correction Board's treatment of ethics opinions that told Colonel Bader he could perform dual roles. Like the Board, the government refuses to acknowledge or grapple with the fact that the ethics opinions advised Colonel Bader that there was "no legal objection" to him working for GMRE while also serving as a part-time officer, as long as he complied with the restrictions the ethics opinions identified. Appx161.

Unable to justify the Correction Board's error on the evidence, the government doubles down on the error. The government, like the Board, claims that a portion of an ethics opinion addressed to statutes that Colonel Bader was never accused of violating, and did not violate, somehow warned him not to perform the dual roles the ethics opinion told him he could perform. Not so. The Correction Board failed to address the true substance of the ethics opinions, and when it did address them, its conclusions were contrary to the evidence before it. The Correction Board's decisions therefore fail.

The same is true for Colonel Bader's argument that collaboration with the military, as a contractor, in establishing certain scope of contract requirements is consistent with applicable laws pursuant to

Other Transaction Authority. The government acknowledges that the Correction Board never addressed this argument and again relies on waiver. But Colonel Bader adequately preserved this issue. The government tries to address the merits of the argument now, but it cannot provide a rationale that the Board never gave. And even now, the government does not identify any procurement law or regulation that Colonel Bader violated. In short, Colonel Bader again complied with a complex set of laws. When the Inspector General faulted him for this permissible conduct, he asked the Correction Board to consider whether his permissible conduct could be the basis of an ethics violation. The Board ignored his argument. The Board therefore did not meet the baseline requirements for reasoned decision-making.

Finally, the government cannot show that the Board grappled with key witness Russo's testimony that her statements may have been misinterpreted by the Inspector General. The government, like the Board, acts as though that statement does not exist. The Board's failure to contend with the statement's implications for the Inspector General's conclusions renders its decisions arbitrary and capricious.

These procedural missteps require reversal. They also add up to a case in which there is no substantial evidence that Colonel Bader misused his office. With the exception of his misunderstanding of the cooling off period rule—which was not the basis for the Board's misuse-of-office finding—Colonel Bader complied with the laws governing a part-time officer's representations to the military, advice provided by military ethics advisors, and government procurement regulations. The key witness who testified that she nevertheless felt intimidated by Colonel Bader's status later testified that she may have been manipulated and misinterpreted by the Inspector General. There is no evidence left to support a finding that Colonel Bader used his public office for private gain, much less that he acted with the intent required by the applicable regulation.

# I. THE CORRECTION BOARD'S DECISIONS WERE ARBITRARY AND CAPRICIOUS.

## A. The Correction Board Ignored Colonel Bader's Argument That Representing A Civilian Employer To An Agency Where One Serves Part-Time Cannot Itself Constitute Misuse Of Public Office.

The government does not identify any response by the Correction Board to Colonel Bader's argument that representing a civilian employer to an agency where one serves part-time does not itself

constitute misuse of public office, as the ethics opinions Colonel Bader received instructed. That is not surprising. The Correction Board never responded to this argument and apparently misunderstood the ethics opinions. This requires reversal.

#### 1. Colonel Bader Raised This Issue Below.

Colonel Bader repeatedly argued in submissions to the Correction Board that "[b]eing a part-time or retired general officer and also a contractor in and of itself cannot constitute the use of a public office for private gain." Appx225–226; *see also* Appx103 (arguing it is "not unusual nor inappropriate" for a person to interact with a military office as both a "part-time National Guard officer" and "as a defense contractor"); Appx103 (arguing it is not "unusual or abnormal" for a person to "act on one occasion in a military capacity and on another occasion in a civilian capacity"); Appx104 (arguing that the Inspector General improperly relied on evidence that was a natural outcome of Colonel Bader being a "contractor that is also a part-time officer, not evidence of misconduct"). Colonel Bader also submitted the ethics opinions he had received, explaining that they "stated that [he] was not

prohibited from working for GMRE." Appx155–59; Appx161–62; Appx217–218; Appx242.

In the Court of Federal Claims, Colonel Bader continued to argue that the Correction Board improperly relied on the fact that he "work[ed] closely with government officers, which [is] part and parcel of any type of contracting engagement," Appx685, and that the Correction Board "wholly ignored" that the military had advised him in ethics opinions that he could hold the dual roles he held. Appx515.

The government says Colonel Bader waived this argument by not specifying below that one reason "[b]eing a part-time . . . officer and also a contractor in and of itself cannot constitute the use of a public office for private gain," Appx225–26, is that Congress has considered when a part-time officer may act as a contractor and decided that performing dual roles is generally permissible. *See* Resp. Br. 18–20. Having made the broader argument that holding dual roles cannot itself constitute misuse of office, Colonel Bader is free to "make any argument in support of that claim," including that Congress has had the final word on this issue. *Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992); *see*

*also Pfizer, Inc. v. Lee*, 811 F.3d 466, 471 (Fed. Cir. 2016); *Consolidation Coal Co. v. United States*, 351 F.3d 1374, 1378 (Fed. Cir. 2003).

The Correction Board was also on notice of the specific legal issue regarding section 207, because the ethics opinions Colonel Bader relied on made clear that Colonel Bader was not prohibited from working for GMRE while serving in a part-time status *because section 207 did not prohibit that conduct*. *See* Appx157–58; Appx161.

#### 2. Failure to Adequately Consider This Issue Rendered the Correction Board's Decisions Arbitrary and Capricious.

The government does not point to any response by the Correction Board to Colonel Bader's argument, or any acknowledgment that the ethics opinions told Colonel Bader that holding his dual roles was permissible. Failure to even consider these issues requires reversal. *See Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) ("[B]ecause the Board's decision did not respond to two of [plaintiff's] arguments … we conclude that the Board's decision was arbitrary.").

1.a. The government misconstrues Colonel Bader's argument. Colonel Bader is not arguing that conduct that *violates* section 207 cannot also violate 5 C.F.R. § 2635. His argument is that conduct that

Congress chose to *permit* under section 207 cannot form the basis of a violation of section 2635. *See* Op. Br. 41–43. The government has no response to this argument. It does not dispute that section 207 permits part-time military officers to represent private employers back to their agencies, with only specific exceptions that (outside of the cooling off period restriction) do not apply here. And it does not dispute that the military cannot forbid conduct under section 2635 that Congress considered, and allowed, under section 207. The Correction Board may not prohibit what Congress permitted. *See Doyon v. United States*, 58 F.4th 1235, 1246–49 (Fed. Cir. 2023); *Baude*, 955 F.3d at 1293.

There is no real dispute that Colonel Bader was penalized for performing dual roles, as permitted under section 207. The government argues that the Board's determination was substantiated by Colonel Bader's "ongoing relationships," and "direct access" in his military role—which is to say, by the fact that he remained a part-time officer. Resp. Br. 23–24. Indeed, the government acknowledges that performing dual roles was at least one basis of the military's conclusion that Colonel Bader violated section 2635. *See* Resp. Br. 34 (noting that the Correction Board "conclude[ed] that Col. (Ret.) Bader crossed ethical

lines in dealing with his current military office while in his private sector job," a conclusion "supported by substantial evidence . . . that Col. (Ret.) Bader received access that he would not have otherwise received due to his military status").

The government does not point to any other action considered by the Board that could transform Colonel Bader's permissible dual roles into an ethics violation. His inadvertent violation of the cooling off period rule in section 207(c) undisputedly was not the basis of the Correction Board's misuse-of-office finding.[1] *See id.* at 23–24. And Colonel Bader's actions were consistent with the remainder of section 207, as the government, again, does not dispute.

The government attempts to muddy the facts, but the record is clear. For one thing, the government is wrong that an advisory opinion the Correction Board relied on "noted at least one instance where, mistakenly or not, Col. (Ret.) Bader conducted private business on his military email account." Resp. Br. 24 (citing Appx488). In fact, the

[1] The government also does not argue that the finding regarding inadvertent violation of the cooling off period in section 207(c) alone could support an affirmance. In fact, the government concedes that "if this Court disagrees that his actions violated § 2635, a remand would be necessary." Resp. Br. 22 n.7 (emphasis added).

advisory opinion noted that a *different* officer "mistakenly emailed [Colonel Bader's] official email account" regarding GMRE business. Appx488. Colonel Bader responded "from his GMRE account and over his GMRE signature block." *Id.*

The government also points to a portion of the Inspector General's report stating that Colonel Bader "directly engaged with the AATC leadership regarding a contract on behalf of GMRE which resulted in an award." Resp. Br. 23, 25, 40 (citing Appx202). But the Inspector General was discussing the cooling off period violation, not misuse of office. The problem the Inspector General found with this "direct[] engage[ment]" was that it happened "during" a "cooling off" period. Appx202.

Next, the government says the Inspector General found that Colonel Bader "[w]hile in a duty status" "was afforded direct access to the NGB, and actively solicited and obtained the assistance of subordinate military officers to secure a contract on behalf of his employer, GMRE." Resp. Br. 9–10 (citing Appx202); *see also id.* at 23, 40. This misleadingly suggests that Colonel Bader used his access as a military officer, while in duty status, to secure a contract for GMRE. That is not what the Board found. As the Correction Board recognized,

Colonel Bader did not do anything in a military status to benefit GMRE. Appx449. Colonel Bader only asked for assistance from military officers regarding a GMRE contract while acting as a *private contractor*—precisely as a contractor is meant to do. *See, e.g.*, Appx170 (noting Colonel Bader's use of his private email to solicit assistance); Appx196 (Colonel Bader "obviously wrote" draft email language which he sent to Russo "as the Vice President of the company").

The government similarly says Colonel Bader "both worked on contractual requirements for the Air Force and then bid on them as a Federal contractor." Resp. Br. 24. Again, this is misleading. There is no evidence that Colonel Bader worked on contract requirements *in his official role* for contracts that he bid on for GMRE. The evidence shows that *in his role as a contractor* he made suggestions regarding the content of a Statement of Objectives to be included in an agreement, as allowed by Other Transaction Authority. Op. Br. 20; Appx184–85. As unrebutted evidence in the record shows, under that authority, assisting with defining the scope of a contract, including by collaborating in developing "program objectives" and "statement[s] of work," is perfectly appropriate. Appx269 n.6.

Section 2635 provides examples of prohibited conduct: If a Securities and Exchange Commission employee calls a company on behalf of a family member with a consumer complaint and mentions that he works for the SEC and reviews the company's SEC filings, he violates section 2635 "by invoking his official authority in an attempt to influence action to benefit his relative." 5 C.F.R. § 2635.702(a) (Example 1). And if a Department of Commerce employee raises the delay in approval of a friend's export license as a matter for official inquiry, and asks in a staff meeting that the license be expedited, she has "used her public office in an attempt to benefit her friend." *Id.* (Example 2).

These examples bear no resemblance to the facts here. The Board identified no instance when Colonel Bader either "invoked his official authority," by, for example, bringing up his military role while working on behalf of GMRE, or any instance in which he "used his public office," by, for example, pursuing benefits for GMRE while serving in his public role. The government therefore resorts to the same vague language the Board relied on: Colonel Bader's roles were "blurred," resulting in the "appearance" of an ethical violation. Resp. Br. 23–24. What, if anything, he did to blur those roles remains a mystery. Certainly the government

cannot mean that use of a "politely directive tone" itself "substantiat[ed] a violation of section 2635." Resp. Br. 24.

In short, the Correction Board did not rely on the type of conduct that section 2635 targets. Instead, it relied on conduct of the type Congress considered and decided to permit under section 207: maintaining a role as a part-time officer while making representations to the military as contractor. That, the Board cannot do. *See, e.g.*, *Doyon*, 58 F.4th at 1246–49 (vacating and remanding where military correction board applied an interpretation of a statute that was incorrect and contrary to congressional intent); *Marshall v. United States*, 164 Fed. Cl. 580, 596 (2023) (similar). The Correction Board's refusal to acknowledge or address Colonel Bader's argument that the Inspector General improperly relied on evidence that he performed dual roles he was permitted to perform renders its decisions arbitrary, capricious, and contrary to law. *See Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995).

1.b. The government also does not identify any place where the Correction Board acknowledged that military ethics opinions told Colonel Bader that he could serve in dual roles. The government

concedes that the ethics opinions "did not strictly *prohibit*" Colonel Bader from "holding private employment while in part-time military status." Resp. Br. 21. But that is understatement. Not only did the ethics opinions not prohibit Colonel Bader from holding both positions simultaneously, they expressly instructed Colonel Bader that "there [wa]s *no legal objection*" to him working for GMRE while also serving as a part-time officer, as long as he complied with the restrictions noted in the ethics opinion. Appx161 (emphasis added); *see also* Appx157 (instructing Colonel Bader that he "may continue to seek employment with GMRE").[2] And, aside from the cooling off period miscalculation, he did comply. The Board's failure to contend with this fact renders its decisions arbitrary and capricious and requires reversal.

Like the Board, the government pretends that the ethics opinions actually warned Colonel Bader *away* from serving in dual roles by pointing to statements in an ethics opinion regarding 18 U.S.C. §§ 203

[2] The opening brief referred to "ethics advice from the military stating that [Colonel Bader] 'was not prohibited from working for GMRE.'" Op. Br. 56. The quoted language in this sentence is from Colonel Bader's description of the ethics advice below. *See* Appx218, Appx503. It accurately describes the ethics advice, which told Colonel Bader "there [wa]s no legal objection" to him "engaging in off-duty employment" with "GMRE." Appx161.

and 205. Resp. Br. 21. But as Colonel Bader explained in his opening brief, the restrictions in 18 U.S.C. §§ 203 and 205, do not apply when a person is not in Title 10 status, as the ethics opinion itself made clear. Op. Br. 46; Appx156–57. The government does not argue, and no one has ever argued, that Colonel Bader violated 18 U.S.C. §§ 203 or 205. The military "did not discover any evidence which indicated [Colonel] Bader represented GMRE while on Title 10 orders." Appx201.[3]

The Board misunderstood the ethics opinion's statements regarding 18 U.S.C. §§ 203 and 205. Op. Br. 46–47. And the government offers no defense of that error, mirroring it instead. Resp. Br. 21. Because the Correction Board's decisions failed to address the true substance of the ethics opinions, and ran "counter to the evidence before" it, the decisions cannot stand. *See Motor Vehicle Mfrs. Ass'n of*

[3] The government, like the Board, continues to assert that Colonel Bader "received subsequent cautions from the NGB ethics office advising him of potential ethical conflicts of interest between his military and civilian positions." Resp. Br. 8. In fact, the NGB ethics office advised Colonel Bader that there were "no actual conflicts of interest" between his military and civilian positions. ADD-2. A conflict could arise if a GMRE matter "c[a]me before [him] in [his] official capacity." *Id.* There is no allegation that any matter involving GMRE ever came before him in his official capacity.

*U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Chisolm v. United States*, 41 F. App'x 394, 398–99 (Fed. Cir. 2002).

### B. The Correction Board Ignored the Argument that Colonel Bader's Actions Were Permitted Pursuant to Other Transaction Authority.

The Correction Board's failure to address Colonel Bader's arguments about Other Transaction Authority also renders its decision arbitrary and capricious. Importantly, the government *agrees* that the Correction Board did "not specifically address[]" the argument. Resp. Br. 28. That requires a remand to the Board.

#### 1. Colonel Bader Raised This Issue Below.

The government argues that the Court should disregard the Correction Board's undisputed failure to engage with Colonel Bader's arguments regarding Other Transaction Authority because, according to the government, Colonel Bader failed to raise this issue in the Court of Federal Claims. Resp. Br. 25. But Colonel Bader argued to that court that the Correction Board's decisions wrongly denied his appeals "without analysis" and failed to provide an "adequate explanation." Appx64; *see also* Appx510. This was enough to "fairly put [the court] on notice as to the substance of the issues," as Colonel Bader's arguments regarding Other Transaction Authority were central before the

Inspector General and the Board. *See, e.g.*, *Sneed v. Shinseki*, 737 F.3d 719, 724 n.6 (Fed. Cir. 2013); *LKQ Corp. v. GM Glob. Tech. Operations LLC*, No. 2022-1253, 2023 WL 330605, at *4–5 (Fed. Cir. Jan. 20, 2023) (per curiam); *see* Appx167–68; Appx200–201; Appx102–103.

Nevertheless, Colonel Bader also specifically contended that the Correction Board did not address the Inspector General's failure to understand the "technical nature of the contracting world"—a reference to the Inspector General's finding relating to Other Transaction Authority. *See* Appx681 (18:1–4); *see also* Op. Br. 34 (citing oral argument transcript); *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 470 (2000) (issue raised at oral argument was preserved).

Colonel Bader also raised this issue in his petition to the Correction Board, explaining that his "actions were completely in line with the intent and legal basis of OTAs" and the Inspector General "did not understand the rules of OTAs." *See* Appx102–03. Contrary to the government's suggestion (Resp. Br. 26), it is irrelevant that he did not re-raise the issue in his subsequent petition for reconsideration. "It is the general rule that a litigant does not abandon an argument by failing to raise it in a motion to reconsider." *Neely-Bey Tarik-El v. Conley*, 912

F.3d 989, 1001 (7th Cir. 2019); *see also Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("[W]hen an appellant has raised an issue before an administrative judge but not in a petition for review to the full Board, the issue is preserved for review by this court"). Indeed, the government "cites no authority for the proposition that [Colonel Bader] was required to file a request for reconsideration" on this point. *Campbell Soup Co. v. Gamon Plus, Inc.*, 787 F. App'x 731, 740 (Fed. Cir. 2019) (rejecting waiver argument).

#### 2. The Court Should Not Presume the Board "Implicitly" Rejected This Argument.

The government tries to avoid reversal by arguing that the Court should "presume" the Correction Board "implicitly rejected" Colonel Bader's argument about Other Transaction Authority. Resp. Br. 27. But such a presumption makes a mockery of judicial review of administrative decisions; it is antithetical to the "arbitrary and capricious" standard. The Correction Board "must respond to *all* an applicant's non-frivolous arguments," and must provide enough explanation from which its rationale can "reasonably be discerned." *Schussler v. United States*, 152 Fed. Cl. 207, 213 (2021) (emphasis added), *appeal docketed*, No. 21-1819 (Fed. Cir. Apr. 2, 2021). This

Court "cannot exercise [its] duty of review unless [it] [is] advised of the considerations underlying the action under review." *In re Nuvasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)).

The government does not cite contrary authority. The two cases it cites applying the "arbitrary and capricious" standard say only that courts may sometimes presume an administrative board considered certain pieces of *evidence*. They do not suggest that such a presumption can apply to entire *arguments*. *See* Resp. Br. 27–28 (citing *Melendez Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011), and *Charles G. Williams Constr., Inc. v. White*, 326 F.3d 1376, 1380 (Fed. Cir. 2003)).

Colonel Bader's argument was that actions that are lawful under the OTA rules cannot be the basis for finding a misuse of public office for private gain in violation of 5 C.F.R. § 2635.702. *See* Appx102–103. The Correction Board provided no way to "discern [its] path" in rejecting that argument. *Dickson*, 68 F.3d at 1405 (quotation marks omitted). And no argument that the government raises on appeal can fix that fundamental flaw in the Correction Board's decision. Courts

must "review[] an *agency's* reasoning to determine whether it is 'arbitrary' or 'capricious,'" not the post hoc reasoning in the government's appellate briefs. *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1356 (Fed. Cir. 2018) (emphasis added); *Chenery Corp.*, 318 U.S. at 87.

### 3. The Government Still Provides No Reasonable Response Regarding Other Transaction Authority.

In any event, the government's post hoc reasoning fails too. First, the government argues that the OTA rules are irrelevant because "an agency is required to comply with any other statute that applies to contractual transactions in general." Resp. Br. 29 (quotation marks omitted). But the very Congressional Research Service (CRS) report that the government cites states that "[t]here is no uniform guidance as to which statutes apply to these other transactions." Appx290. Nor is there any guidance about which regulations apply: neither the government nor the Correction Board has offered any authority for the proposition that the ethics regulation in 5 C.F.R. § 2635.702 can be interpreted to prohibit actions that comply with the reticulated system of OTA rules. Again, if the government wants to eliminate collaboration

by private employees in Colonel Bader's situation, it should do so expressly and prospectively.

Second, the government argues that "an employee who both establishes a government requirement and also proposes fulfilling the same requirement receives an unfair competitive advantage" and thus acts inconsistently with OTA rules. Resp. Br. 30 (quotation marks and brackets omitted). But again, the CRS report belies the government's argument. It underscores that Other Transaction Authority promotes "a more collaborative working relationship," in which an agency and its contracting partners "are able to develop a flexible arrangement" and start with "a 'blank page' from which to begin when negotiating." Appx269. As shown by the unrebutted evidence discussed in the Inspector General report, this means the agency is "allowed to openly discuss requirements and to collaborate with contractors." Appx200. In fact, a contractor is permitted to do precisely what the military faulted Colonel Bader for doing here: work with the military to jointly define the scope of a contract by developing "program objectives" and "statement[s] of work." Appx269 n.6. In short, all the evidence on this issue undermines the government's argument.

### C. The Correction Board Failed to Consider Key Portions of Russo's Letter.

Colonel Bader is not asking the Court to reweigh the evidence or give greater credibility to portions of Russo's letter than the Correction Board did. He is asking the Court to require the Correction Board to consider those portions of Russo's letter for the first time. The Board did not address Russo's concerns that she may have been influenced by an investigator who was seeking "to elicit a negative response" and that her prior "statements may have been misinterpreted by the [Inspector General]." Appx382. The Correction Board instead continued to rely, without question, on the Inspector General's interpretation of her statements. *See, e.g.*, Appx447, Appx 449. The government does too. Resp. Br. 32. Remarkably, the government still does not acknowledge Russo's statement that she may have been misinterpreted. The word "misinterpreted" does not appear in the government's brief.

The government asks the Court to assume that the Board appropriately considered all aspects of the Russo declaration. But when a piece of evidence goes to the heart of a case, this Court insists that there be some analysis from the Board. This Court considered a similar situation in *Chisolm*, 41 F. App'x at 401. There, the Correction Board

determined that no material error or injustice existed in a servicemember not receiving a "definitely promote" recommendation. In doing so, the Board noted that the senior rater, who would typically write to the Correction Board in support of a candidate, "provided no support for upgrading the promotion recommendation." *Id.* But the senior rater had not submitted a letter because he had retired and moved. *Id.* He later submitted a "strongly supportive letter." *Id.* In a later opinion, the Correction Board acknowledged the letter, but dismissed it, and failed to address key statements it made that went "to the heart of the matter." *Id.* This Court held that the Correction Board could not "summarily discount[] this letter," and should have addressed the important statements it made. *Id.*

The same is true here. It was not enough for the Correction Board to acknowledge, and even agree with, some of Russo's statements while wholly ignoring statements that went to the heart of the matter: the reliability of the Inspector General's conclusions about Russo's statements. The Correction Board cannot ignore such statements by someone who was indisputably a key witness.

## II. THE CORRECTION BOARD'S DECISIONS WERE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

The government maintains that substantial evidence supports the Board's determination that Colonel Bader misused his public office, but points only to evidence that Colonel Bader took permissible actions in his role as a private contractor who still served part-time in the military. That evidence cannot support a finding that Colonel Bader used his office for personal gain, let alone that he did so intentionally. And contrary to the government's assertions, evidence of intent is required by 5 C.F.R. § 2635.702(a), which is the only provision on which the Board's section 2635 finding can rest.

### A. The Correction Board's Findings Do Not Support A Conclusion that Colonel Bader Misused His Public Office.

The evidence that the government relies on to support the Board's misuse of office finding consists of insinuations and misperceptions based on Colonel Bader's legitimate service as a part-time officer and part-time private employee. That he had "access" to the military in his official position and separately communicated with Air Force officials to win contracts for GMRE in his private role merely demonstrates that he maintained his position as a part-time Air Force officer while working

for GMRE. It is undisputed that Colonel Bader never "represented GMRE while on Title 10 orders as Brig Gen Bader." Appx201. And as explained above, merely holding both of those positions is not only permitted under 18 U.S.C. § 207, but was expressly sanctioned by the ethics opinions Colonel Bader received.

Similarly, neither collaborating on a contract's scope under OTA protocols nor writing "politely directive" emails from his GMRE email address and over his GMRE signature block, Appx448, indicate that Colonel Bader used his *military authority* to obtain contracts for GMRE. To the contrary, Colonel Bader's diligence in sending emails from his GMRE account when conducting GMRE business demonstrates that Colonel Bader "went to great lengths to make abundantly clear in which capacity he was acting." Appx109; *see also* Appx110. That Russo purportedly felt intimidated by Colonel Bader's rank, despite his best efforts to differentiate his roles, also is not evidence of misuse of office. It is based entirely on her feelings and not any "use" by Colonel Bader of anything. The Inspector General's conclusions about Russo's feelings are not reliable anyway, given her testimony that she may have been

misinterpreted. What this does show is how central Russo's evidence is to the proper disposition of this issue.

The government cannot point to any evidence showing that Colonel Bader took any action to use his public office for private gain, because there is no evidence in the record supporting such a conclusion. As such, the Board's determination cannot stand. *See Wright v. Dep't of Transp.*, 900 F.2d 1541, 1545 (Fed. Cir. 1990) (holding that "substantial evidence does not support … [the plaintiff's] removal" where the plaintiff's evidence "unequivocally support[ed]" her position and the agency's evidence "[a]t best … 'suggest[ed]'" its contrary view).

**B. A Violation of 5 C.F.R. § 2635.702(a) Requires Intent, Of Which There Is No Substantial Evidence.**

Moreover, the government does not dispute that a violation of 5 C.F.R. § 2635.702(a), which prohibits government employees from using their official authority with the "inten[t] to coerce or induce another person … to provide" a personal benefit, requires intent. But none of the evidence in the record supports that Colonel Bader acted with intent. Rather, the evidence the government cites—Colonel Bader's access to and communication with Air Force officials, his collaboration on drafting a contract's scope, and his emails to Air Force officials

concerning GMRE contracts, Resp. Br. 39–40—goes only to the *fact* of Colonel Bader's actions, not his intent as to how they would be received.

Without evidence concerning Colonel Bader's intent, the Board's decision under section 2635 is unsupportable. *See Naekel v. Dep't of Transp.*, 782 F.2d 975, 979 (Fed. Cir. 1986) (reversing agency determination where the "decisive inquiry" was whether the plaintiff acted "with the intent to deceive the [agency]," but the "only evidence from which to conclude there was deceptive intent [wa]s that offered in support of the fact" of the plaintiff's action).

The government contends that the lack of evidence regarding intent is irrelevant because 5 C.F.R. sections 2635.101(b)(14) and 2635.502 can be violated merely by the appearance of an ethical conflict, regardless of intent. Resp. Br. 35–38. But even if those provisions had formed the basis for the Board's determinations—which they did not—they, too, require intent.

Only "two allegations were approved for [the Inspector General's] investigation: whether [Colonel] Bader violated post-government employment restrictions, as stated in Title 18 United States Code, Section 207, and whether he used his public office for private gain, *as*

*stated in 5 C.F.R. 2635.702.*" Appx165 (emphasis added). There is no question that the investigation—which forms the basis for the advisory opinions on which the Board relied—did not involve an allegation of a violation of section 2635.101(b)(14).

The government notes that the Inspector General cited section 2635.702(d). Resp. Br. 37. But the Inspector General's misuse-of-office finding could not have rested on section 2635.702(d). To substantiate a violation of that section, the Inspector General would have had to find that Colonel Bader failed to "comply with any applicable requirements of § 2635.502." 5 C.F.R. 2635.702(d). The Inspector General's report says nothing about Colonel Bader's compliance with section 2635.502, and the government cannot suggest for the first time in this Court that he violated that separate regulation. *See Chenery Corp.*, 318 U.S. at 88. The Inspector General's findings under section 2635 therefore can only rest on subsection 702(a). *See* Appx192. Sections 2635.101, 2635.502 and 2635.702(d) cannot be the basis of the Inspector General's conclusion.

Regardless, those provisions also require intent. Section 101(b)(14) requires employees to "*endeavor* to avoid any actions" that would cause

the appearance of an ethics violation to a reasonable person, and section 502 applies only when an employee "knows" that a matter is likely to have certain financial implications and "determines" that a reasonable person would therefore question the employee's impartiality. 5 C.F.R. §§ 2635.101(b)(14) (emphasis added), 2635.502(a). That the provisions use a "reasonable person" standard for determining the *types* of potential conflicts that employees should strive to avoid does not remove their explicit intent requirements.[4]

The appearance of an ethics violation, without intent to use one's public office for private gain, does not violate section 2635.702(a). The government cannot make up for the lack of evidence of Colonel Bader's intent under section 2635.702(a) by retroactively applying out-of-context standards from provisions the military never determined he violated. To the contrary, the unrebutted evidence shows that Colonel

---

[4] Colonel Bader has argued that he lacked the required intent to violate 5 C.F.R. § 2635.702 at every stage of these proceedings. *See* Appx99, Appx112 (initial brief to Correction Board), Appx373–374 (reconsideration brief to Correction Board), Appx516 (Court of Federal Claims brief). He raises the inapplicability of § 2635.101(b)(14)'s reasonable person standard for the first time on appeal because it was erroneously applied in the first instance by the trial court. *See Sparks v. Eastman Kodak Co.*, 230 F.3d 1344, 1346 (Fed. Cir. 2000) ("The whole point of an appeal is to claim that the court below erred in its conclusion as to arguments raised.").

Bader worked diligently to keep his civilian and military roles separate when acting in a civilian role—for instance, by wearing civilian clothes, introducing himself as "Mr. Bader," and not mentioning his miliary rank in conversation—and that "any potential errors that he made were unintentional." Appx109–110.

Far from asking this Court to reweigh the evidence, Colonel Bader asks that this Court enforce the Correction Board's obligation to make reasonable determinations given the evidence in front of it. Because the Board's conclusion that Colonel Bader intentionally misused his office is "not supported by substantial evidence," and the evidence that Colonel Bader carefully distinguished between his military and civilian roles "[i]s unrebutted," the Board's decision must be reversed. *Kelly v. United States*, 826 F.2d 1049, 1053 (Fed. Cir. 1987).

## CONCLUSION

For the foregoing reasons, the Court should vacate the judgment of the Court of Federal Claims and remand with instructions for that court to remand to the Correction Board to remove the letter of reprimand from Colonel Bader's file, declare that Colonel Bader shall be

retired in the grade of 0-7, and award backpay. Alternatively, the Correction Board should be required to reconsider its decisions.

April 21, 2023

Respectfully submitted,

/s/ Jillian Sheridan Stonecipher
CARTER G. PHILLIPS
JILLIAN SHERIDAN STONECIPHER
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

CAROLINE A. WONG
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

*Counsel for Plaintiff-Appellant Daniel Bader*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF system this 21st day of April, 2023, and that a copy was served on all counsel of record by the CM/ECF system.

April 21, 2023

*<u>/s/ Jillian Sheridan Stonecipher</u>*
Jillian Sheridan Stonecipher

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 and the Rules of this Court. The brief contains 6216 words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

April 21, 2023

*/s/ Jillian Sheridan Stonecipher*
Jillian Sheridan Stonecipher